### EHRLICH v. MERRITT.
No. 6354.

Circuit Court of Appeals, Third Circuit.
April 18, 1938.

Edward R. McGlynn, of Newark, N. J. (Joseph Weintraub, of Newark, N. J., on the brief), for appellant.

Townsend & Doyle, of Jersey City, N. J. (Mark Townsend, Jr., and Thomas Doyle, both of Jersey City, N. J., on the brief), for appellee.

Before BUFFINGTON, DAVIS, and BIGGS, Circuit Judges.

DAVIS, Circuit Judge.

The defendant has appealed from a judgment for the plaintiff entered in the District Court on a verdict of the jury. The plaintiff sued the defendant to recover damages sustained in the death of her husband, Ralph Merritt, who died as a result of injuries in an automobile accident allegedly caused by the negligence of the defendant's intestate, Herbert Ehrlich, who also died as a result of the accident. Ehrlich, in fact, predeceased Merritt.

Two questions arise out of this appeal. The first one is whether or not the evidence produced at the trial supports the alleged negligence of Ehrlich, and the second one is whether or not the plaintiff has a cause of action against his estate in view of the fact that he predeceased Merritt.

The evidence presented before the trial court is entirely circumstantial. Ehrlich was killed almost instantly; Merritt died a few days after the accident, and no eyewitnesses, if there were any, testified. The plaintiff, however, did produce the testimony of two policemen who arrived on the scene of the accident a few minutes after it happened, the testimony of a garageman who knew the condition of the automobile both before and after the accident, and her own testimony concerning the relationship existing between the two men and the purpose of their trip on the night of the accident. This evidence indicates that Ehrlich and Merritt were friends; that on the night of the accident Ehrlich invited Merritt to accompany him in his car to drive to a dinner given in Newark, N. J., by a "paint association"; that on the way home from the dinner they were driving along United States highway No. 1 on the elevated roadway known as the Pulaski Skyway; that the car, driven by Ehrlich, collided with a stanchion located on a "safety aisle" dividing the highway from a ramp leading therefrom to Jersey City; that Ehrlich was apparently dead by the time the police arrived a few minutes later and that Merritt died four days later. The evidence also tends to show that the night on which the accident occurred was clear; that the highway at that point was 150 feet wide, dry and well lighted; that on the stanchion with which the car collided there was a large reflector, visible from two to three city blocks away; that there were skid marks 40 to 50 feet long leading to, and apparently made by, the wrecked car; that the car, which prior to the accident was in good shape, was so beyond repair that it was sold for junk; that its motor had been shoved back into the body, and that both the frame and the body were badly kinked; that parts of the car were found scattered as far as 100 feet away from the scene of the accident; that the stanchion, which was made of iron, was bent, and that a 25-pound iron ball which had rested on the top of the stanchion had been hurled about 10 feet against a traffic police booth.

This evidence is clearly sufficient to support the finding that Ehrlich was driving in a reckless manner and at a high rate of speed. "The situation presented is within the rule applicable to an accident, which suddenly and for no apparent cause happens, and yet from the very fact of its occurrence an abnormal situation is presented which bespeaks negligence in operation, under the rule of res ipsa loquitur, which

calls upon the defendant for an explanation." Mackenzie v. Oakley, 94 N.J.L. 66, 108 A. 771; Smith v. Kirby, 115 N.J.L. 225, 178 A. 739; Hendler v. Meadows, 180 A. 399, 13 N.J.Misc. 684. See, also, McLaughlin v. Joseph Horne Co., 3 Cir., 206 F. 246; Myers v. Pittsburgh Coal Co., 233 U.S. 184, 34 S.Ct. 559, 58 L.Ed. 906.

The second question is whether or not the plaintiff, who is the widow of and administratrix ad prosequendum of the estate of Merritt, has a cause of action against the estate of the deceased Ehrlich, in view of the fact that Ehrlich predeceased Merritt.

There is no doubt that, if this suit were brought under the common law, the plaintiff would have no cause of action, for at common law the death of either the tortfeasor or of the injured party resulted in the abatement, of the cause of action. 1 C.J. Secundum, Abatement and Revival, 132 et seq. This rule, however, has been greatly changed both in England and in the United States. The accident occurred in New Jersey and the law of that state determines this question. 1 C.J. Secundum, Abatement and Revival, 183, 184.

The Legislature of New Jersey, in order to remedy the hardships created by the common-law rule, passed two statutes which are relevant to this case. In 1848 it passed the so-called Death Act, P.L.1848, p. 151, which created a "new right of action" in the personal representatives of a person who died as the result of the "wrongful act, neglect or default" of another. It permits the personal representatives of such deceased injured party to maintain an action against the tort-feasor for damages to be distributed to the widow and next of kin of the deceased, which damages were to be measured by their personal loss. See section 1 of the Death Act, R.S.N.J.1937, 2:47–1, 2 Comp.St.N.J. 1910, p. 1907 § 7, and section 2, as amended, 2 Comp.St.N.J.1910, p. 1908, § 8, Comp.St. Supp.N.J.1924, § 55—8; Soden v. Trenton & Mercer County Traction Corp., 101 N.J.L. 393, 127 A. 558, 559; Hackensack Trust Co. v. Vanden Berg, 88 N.J.L. 518, 97 A. 148. This act did not, however, permit the estate of the deceased to recover damages, such as hospital and medical expenses or loss of earnings, suffered by him during the interval between the accident and death (Soden v. Trenton & Mercer County Traction Corp., supra), nor did it permit recovery against the estate of the tort-feasor if he died before the action was brought. Hackensack Trust Co. v. Vanden Berg, supra.

In order further to remedy the hardships created by the common law, the Legislature of New Jersey in 1855 passed the Executors Act which was supplementary to the Death Act. Soden v. Trenton & Mercer County Traction Corp., supra. Section 4 of this act gives the executor or administrator of a deceased injured party the right to recover against a tortfeasor all damages, including medical and hospital expenses, etc., which the injured party could have recovered had he lived. R.S.N.J.1937, 2:26–9, 2 Comp.St.N.J.1910, p. 2260, § 4; Soden v. Trenton & Mercer County Traction Corp., supra. Section 5 of this act was designed to permit the injured party or his personal representatives to sue the personal representatives of the tort-feasor if he happened to die before action could be brought against him personally. It provided in part as follows: "That where any testator or intestate shall, in his or her lifetime * * * have committed any trespass to the person or property, real or personal, of any person or persons, such person or persons, his or her executors or administrators, shall have and maintain the same action against the executors or administrators of such testator or intestate as he, she or they might have had or maintained against such testator or intestate, and shall have the like remedy and process for the damages recovered in such action as are now had and allowed in other actions against executors or administrators." R.S. N.J.1937, 2:26–10, 2 Comp.St.N.J.1910, p. 2260, § 5.

It has been held under this section that a cause of action arising under the Death Act survived the death of the tort-feasor. Hackensack Trust Co. v. Vanden Berg, supra. The courts of New Jersey have repeatedly held that these statutes, being remedial, must be liberally construed, and that the courts interpreting them should at all times seek to " 'suppress the mischief and advance the remedy.' Bl.Com.Bk. 1, p. 87." Soden v. Trenton & Mercer County Traction Corp., supra; Hackensack Trust Co. v. Vanden Berg, supra; Tichenor v. Hayes, 41 N.J.L. 193, 32 Am.Rep. 186.

The defendant, however, argues that no cause of action under the Death Act could have accrued against Ehrlich since he died before the injured party Merritt, died, and

254

that therefore no cause of action could have accrued against his estate.

This argument is not only contrary to the remedial purposes of the two statutes involved, but is also unwarranted by the wording of the statutes themselves. Section 5 of the Executors Act provided that the estate of a deceased tort-feasor should be liable for "any trespass to the person" committed by him or her during "his or her lifetime." It makes no distinction between cases in which the tort-feasor predeceased the injured party and cases in which the injured party predeceased the tort-feasor. There is nothing in the statutes or decisions of New Jersey cited by defendant, or discovered by independent research, which indicates that any such distinction was intended. Furthermore, the cause of action created by the Death Act, since it is based upon a "wrongful act, neglect or default," is founded upon a "trespass to the Person" and survives the death of the tort-feasor. Hackensack Trust Co. v. Vanden Berg, supra. It is therefore obvious that the defendant, being the personal representative of Ehrlich, who, in his lifetime, by his wrongful act, neglect or default, committed a trespass to the person of Merritt is liable in her representative capacity, in an action brought by the personal representative of Merritt, for damages caused by Ehrlich's trespass.

The judgment of the District Court is affirmed.